UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **FIRST ASSEMBLY OF GOD CHURCH INC OF LEESVILLE L** | **CASE NO. 2:21-CV-00378** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the Court is "Church Mutual's Motion for Partial Summary Judgment" (Doc. 28) wherein Church Mutual moves for a ruling in its favor and against First Assembly of God Church, Inc. of Leesville, Louisiana ("First Assembly") that: (1) the Umpire's Appraisal Award is not binding on the parties, and does not constitute satisfactory proof of loss; (2) First Assembly does not have a valid cause of action for additional living expenses; (3) First Assembly does not have a claims for diminution of value; (4) the Policy only provides coverage for damages valued at the time of loss; (5) the Policy only provides coverage for damages based on comparable materials and quality; (6) First Assembly does not have a claim for mental anguish; (7) First Assembly has not stated a claim for any damages arising from Hurricane Delta; and (8) the Policy excludes coverage for claims arising from several enumerated causes as set forth in the Exclusion Section of Form A 101 (01-01).

## STATEMENT OF FACTS

The instant lawsuit involves damages allegedly sustained as a result of Hurricanes Laura and Delta.[1] First Assembly is seeking additional insurance proceeds and extra-contractual damages.[2] First Assembly is a church and none of the properties listed in the Policy are dwellings.[3] First Assembly is not seeking damages for additional living expenses.[4]

In February 2021, First Assembly sought appraisal under the Church Mutual Policy.[5] On February 9, 2021, Defendant agreed to retain an appraiser.[6] The appraisal provision in the Policy is, in pertinent, as follows:

    C.    **LOSS CONDITIONS**

. . .

    2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. These two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

a.  Pay its chosen appraiser; and

---

[1] Church Mutual contends that First Assembly has not stated a claim for damages from Hurricane Delta. First Assembly disputes this.
[2] See Doc. 1.
[3] Doc. 12-2.
[4] Defendant's exhibit 2, Plaintiff's Responses to Request for Admissions.
[5] Doc. 1.
[6] Doc. 14-11.

    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our rights to deny the claim.[7]

The appraisal provision of the Policy was amended by Endorsement, which deleted the provision making the appraisal binding.[8]

The Policy provides the following regarding valuation:

**C. LOSS CONDITIONS**

. . .

7. Valuation

    a. Replacement Costs. If Replacement Cost is shown in the Declarations Page as applicable to Covered Property in the event of loss or damage as follows:

    (1) At Replacement Costs (without deduction for depreciation) as of the time of loss or damage, except as provided under c. below.

. . .

    (4) We will not pay more for loss or damage on a Replacement costs basis than the least of:

    (a) The Limit of Insurance applicable to the lost or damaged property;

    (b) The cost to replace "on the same premises" the lost or damaged property with other property:

    1) Of comparable material and quality; and

    2) Used for the same purpose; or

---

[7] Defendant's exhibit, Doc. 12-2, p. 61.
[8] *Id.* p. 43. n

      (c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

  b. "Actual Cash Value." If "Actual Cash Value" is shown in the Declarations page as applicable to covered Property, we will determine the value of Covered Property in the event of loss or damage at "Actual Cash Value" as of the time of loss or damage except as provided in c. below.[9]

. . .

### M. DEFINITIONS

1. "Actual Cash Value" means the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, less allowance for deterioration and depreciation, including obsolescence.[10]

The Policy provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss."[11] Covered Cause of Loss is noted on the Declarations Page as "Special."[12] Special is defined as follows:

### A. COVERED CAUSES OF LOSS

1. When special is shown in the Declarations Page, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
   a. Excluded in Paragraph B., Exclusions; or

   b. Limited in Paragraph C., Limitation;

   that follow.[13]

---

[9] Doc. 12-2, p. 63.
[10] *Id.* pp. 7-11.
[11] *Id.* p. 75.
[12] *Id.*, p. 7-11.
[13] *Id.* p. 93.

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   . . .

   g. Water

   (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

   . . .

2. We will not pay for loss or damage caused by or resulting from any of the following:
   . . .

   (c) Delay, loss of use, or loss of market.

   . . .

   c. (1) Wear and tear;

   (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

   . . .

   (4) settling, cracking, shrinking, or expansion;

   . . .

   (1) Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

> 3. We will not pay for loss or damage caused by or resulting from any of the following 3. A. through 3.C. but if any excluded cause of loss that is listed in 3.A. through 3. C. results in a
>
> Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss.
>
> . . .
>
> c. Faulty, inadequate or defective:
>
> > (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> >
> > (3) Materials used in repair, construction, renovation, or remodeling; or
> >
> > (4) Maintenance;
>
> of part or all of any property on or off the described premises.[14]

The Policy provides for limitations to coverage as follows:

> **C. LIMITATIONS**
>
> The following limitations apply to all policy forms and endorsements, unless otherwise stated.
>
> 1. We will not pay for loss of or damage to property, as described and limited to this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
>
> . . .
>
> c. The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:

---

[14] *Id.* pp. 93-95.

> (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or wall through which the rain, snow, sleet, ice, sand, or dust enters;
>
> or
>
> (2) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.[15]

Church Mutual, through a third-party, inspected the property on August 1, 2020, September 1, 2020, and September 10, 2020.[16] An engineer was engaged to inspect the roofs for wind damage; the inspection occurred on October 8, 2020.[17] Mooring Construction + Restoration provided Church Mutual invoice 69580 (referred to as the "Mooring Invoice"), for emergency services and repairs for a total amount of $384,564.11; the invoice was accompanied by a 200 page report demonstrating the emergency services and repairs as well as the costs thereof performed at the Church.[18]

As of November 17, 2020, the total amount paid, taking into account prior advances and adding back a credit for deductible, was $148,303.56.[19] On November 19, 2020, Church Mutual wrote that they had paid $100,000 towards the $385,564 Invoice 69580, and were still working on it.[20] Church Mutual denied coverage for "shrink-wrapping" the roof for damage mitigation purposes.[21]

---

[15] *Id.* p. 96.
[16] Doc. 29, p. 2, Defendant's Memorandum in Support of Motion for Summary Judgment.
[17] *Id.*
[18] Doc. 14-2.
[19] Doc. 14-3.
[20] Doc. 14-4.
[21] Doc. 12-8.

An email from Brian LaBroi to Galen Hair, dated January 7, 2021, confirmed that Church Mutual had yet to pay the full amount of the Mooring Invoice.[22] On January 11, 2021, Mooring sent a revised invoice to Church Mutual.[23] On January 27, 2021, Church Mutual, through Sedgwick, transmitted a "Mitigation Bill Review Final Audit Report" of the Mooring Invoice, indicating that the entire invoice would not be paid in full.[24]

First Assembly invoked the appraisal process and the next day, on February 9, 2021, Church Mutual acknowledged receipt of the appraisal demand and agreed to retain an appraiser. On February 24, 2021, defense counsel Mandy Simon, spoke with Plaintiff's counsel and informed that it was believed that an appraiser had been hired, but defense counsel did not know who that appraiser was.[25] A second attempt was made to find out the name of defense counsel's appraiser on March 18, 2021.[26] Counsel for Church Mutual again indicated that an appraiser had been hired, but the name of the appraiser was unknown. First Assembly's appraiser declared that as of March 18, 2021, he had not been contacted by anyone claiming to be an appraiser for Church Mutual.[27]

On March 24, 2021, some 44 days after First Assembly invoked the appraisal process,[28] Church Mutual's counsel, Sidney Degan, authored a letter to Plaintiff's

---

[22] Doc. 14-10.
[23] Doc. 14-13, Mooring Construction + Restoration Progress Invoice #1.
[24] Doc. 14-5, Final Audit Report.
[25] Plaintiff's exhibit A, Defendant's Amended Response to Plaintiff's Requests for Admission No. 13.
[26] *Id.* Requests for Admission No. 14.
[27] Plaintiff's exhibit B, Declaration of Randy Thompson.
[28] Louisiana law requires that requires that the appraiser be identified within 21 days or reject First Assembly's invocation.

counsel, Galen Hair, and advised that the request for appraisal was premature.[29] Also included with the Degan letter, was a sworn proof of loss form, which Church Mutual's counsel requested that First Assembly complete and return to itemize the damage it claimed to be in dispute, estimates to repair the property, and amounts First Assembly claimed as damages not paid by Church Mutual.[30]

On June 21, 2021, First Assembly's appraiser, Randal Thompson, submitted his appraisal assessment to Defendant's appraiser and Umpire/Deputy Special Master Cade Cole.[31] Thompson's appraisal assessed $7,610,176.66 and identified the differences between his appraisal and Church Mutual's appraisal.[32] On that same day, Kenneth Jones, Defendant's appraiser, sent Thompson his appraisal assessment for Hurricane Laura only. Thompson's appraisal totaled $1,110,267.38. On October 1, 2021, Deputy Special Master Cole, appointed by this Court, issued his appraisal assessment totaling $5,290,123.88 (Replacement Cost Value) and $5,148,831.83 (Actual Cost Value).[33] The panel award was executed by Thompson on October 18, 2021, and Umpire Cole executed same on October 25, 2021.

Church Mutual has refused to pay the appraisal award but indicated that it would be tendering supplemental payments totaling $15,701.58.[34]

---

[29] Doc. 14-12.
[30] *Id.*
[31] Plaintiff's exhibit A.
[32] *Id.*
[33] Doc. 25-2, Doc. 25-3, Appraisal Award and write-up.
[34] Doc. 14-12.

## S<small>UMMARY</small> J<small>UDGMENT</small> S<small>TANDARD</small>

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F<small>ED</small>. R. C<small>IV</small>. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

*(1) The Umpire's Appraisal Award is not binding on the parties, and does not constitute satisfactory proof of loss*

Church Mutual maintains that the Appraisal Award is not binding; this Court agrees. *See Myers v. Allied Trust Ins. Co.*, 2022 WL 2162588 (W.D. La. 6/15/22); *Church of the King of Lake Charles v. Guideone Mutual Ins. Co.*, 2021 WL 4527454 (W.D. La. 10/4/2021). Church Mutual further seeks to have the Court rule that the appraisal process should be ruled non-admissible as a settlement proceeding and is not the basis for establishing satisfactory proof of loss under Louisiana's bad faith statutes. The Court cannot agree with Church Mutual's argument. The appraisal award, as well as each party's appraisal will be admissible at the trial of this matter, and the jury will determine when Church Mutual received satisfactory proof of loss.

*First Assembly does not have a valid cause of action for additional living expenses and mental anguish*

First Assembly concedes that it does not have a valid claim for additional living expenses and mental anguish. As such, the Court will dismiss these claims with prejudice.

*First Assembly does not have a claim for diminution of value*

Church Mutual argues that if the policyholder is afforded sufficient funds to repair its property, the property should no longer be in a state of diminished value as a result of the loss. First Assembly asserts that Church Mutual's assumption is that the damaged

property is able to be fully repaired because the insurance proceeds tendered are sufficient to repair the property.

First Assembly argues that its claim for diminution of value is necessary to properly compensate the Church for its damages and place it at a pre-loss condition. First Assembly contends that Church Mutual's dilatory behavior has caused significant delays to repair the Church's properties because of the delays, and the fact that the cost for the repairs have increased since August 2020, due to increased price lists and costs. First Assembly suggests that dismissal is not appropriate at this juncture, but a jury instruction advising of the concept of indemnity and double recovery is likely to be appropriate. The Court agrees and finds that the diminution of value will be deferred to the merits of the case.

*The Policy only provides coverage for damages valued at the time of loss*

Church Mutual moves for a ruling that the policy provides coverage for damages valued at the time of loss, and not at the time that an estimate was created.

First Assembly remarks that the policy provides that the measure of actual cash value (ACV) and replacement cost value (RCV) at the time of the loss is applicable for portions of the Church's damages. However, the Church seeks the difference in repair costs at the time of the loss and the present value of those repairs at the present date as damages under Louisiana revised statute 22:1973.

The Court finds that there is an ambiguity in the policy and will deny Church Mutual's requested relief. The policy provides the following as to valuation:

    4. Loss Payment.

        . . .

    7. Valuation.

        a. Replacement Cost. If Replacement Cost is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage as follows:

            (1) At Replacement Cost (without deduction for depreciation) as of the time of loss or damage, except as provided under c. below.

            (2) You may make a claim for loss or damage covered by this insurance on an "Actual Cash Value" basis instead of on a Replacement Cost basis. In the event you elect to have loss or damage settled on an "Actual Cash Value" basis:

                (a) We will then determine the value of Covered Property on an "Actual Cash Value" basis when applying the coinsurance Condition;

                (b) You may still make a claim on a Replacement Cost basis if you notify us of your intent to do so within 180 days after the date of the loss or damage.

        c. "Actual Cash Value." If "Actual Cash Value" is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage at "Actual Cash Value" as of the time of loss or damage except as provided under c. below. . . .[35]

    The Policy also defines "Actual Cash Value" is defined as follows:

---

[35] Doc. 12-2, Policy pp. 3

### M. DEFINITION

> 1. "Actual Cash Value" means the amount it would cost to repair or replace Covered Property with material of comparable kind and quality, less allowance for deterioration and depreciation, including obsolescence.[36]

For "Actual Cash Value," the Policy required Church Mutual to pay the amount it ***would cost*** to repair or replace the covered property with material of comparable kind and quality. This Court interprets this provision to be in direct conflict with the Loss of Payment provision which states that ACV is to be valued at the time of loss. The term "would cost" implies something in the future as opposed to on the date of the loss. It also appears that if the repair or replacement of the covered property is to be with material of like kind and quality, valuing the loss of payment at the time of the loss would be impossible, given that Church Mutual is obligated to pay the amount it ***would cost*** to repair or replace the covered property, considering the increase in the cost of material after a catastrophic event such as a hurricane.

Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against

---

[36] *Id.*, p. 7.

the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

The Court will deny Church Mutual's motion for requested relief as to coverage being valued at the time of the loss. Instead, the Court finds that valuation will be determined by what it would cost to replace or repair the covered property with material of like kind and quality.

*The Policy only provides coverage for damages based on comparable materials and quality*

As noted by Church Mutual, the policy provides the replacement of an item is covered to the extent that they are of comparable material and quality. While the Court agrees with what the terms of the Policy provide, it is unclear as to what specific item(s) of damages Church Mutual is referring, nor does Church Mutual submit any evidence that First Assembly is attempting to be awarded damages for the replacement of a covered item that is not of comparable material and quality. Accordingly, Church Mutual's request is denied.

*First Assembly has not stated a claim for any damages arising from Hurricane Delta*

Church Mutual moves to dismiss any Hurricane Delta claim because it was not plead in the Complaint.[37] Rule 8 of the Federal Rules of Civil Procedure requires that the complaint give fair notice of the claims that is being asserted and the grounds upon which

---

[37] Doc. 1.

it rests. Thus, Church Mutual argues that because the Complaint is insufficient to state any claim for Hurricane Delta, it fails to provide fair notice.

First Assembly contends that the Complaint does allege a Hurricane Delta claim. Specifically, the Complaint alleges that "Complainant has incurred or will incur additional living expenses as a result of the damages caused to their Properties by Hurricanes and Delta, including those additional living expenses that will be incurred during the repair of the Properties."[38]

As noted hereinabove and in Plaintiff's opposition, Plaintiff has conceded that it does not have additional living expenses, and the Complaint alleges only additional living expenses regarding its alleged Hurricane Delta claim. However, First Assembly contends that Church Mutual has been aware of its Hurricane Delta claim for nearly two (2) years. To support its contention, Plaintiff submits correspondence from third-party administrator, Sedgwick, which states the following:

> On October 10, we received a call from Pastor Osteen, stating the church obtained new damage from Hurricane Delta. We have scheduled another re-inspection for Tuesday, October 13. Once we re-inspect the risk we will inform you of the new damages.[39]

The Court finds that Church Mutual has been on notice of the Hurricane Delta claim and will permit First Assembly to amend its Complaint to allege facts regarding its Hurricane Delta claims.

*The Policy excludes coverage for claims arising from several enumerated causes as set forth in the Exclusion Section of Form A 101 (01-01)*

---

[38] *Id.*, ¶ 44.
[39] Plaintiff's exhibit D, Doc. 31-5.

Church Mutual moves to exclude damages that are excluded or limited by the Policy. Specifically, the Policy excludes interior damage from wind driven rain. Church Mutual remarks that one of the major issues of contention is whether the insured premises sustained covered causes of loss that are specifically excluded from coverage and specifically whether the damages First Assembly seeks falls under the limitation set forth in C(1), *i.e.*, the interior of the building sustained damage from rain that was not first caused by a covered cause of loss to the buildings' roof or walls where the rain entered.

First Assembly submits the declaration of Rick Nelson,[40] who attributes the damages to the exterior and interior of the Church as causally related to Hurricane Laura Delta's winds.

The Court finds that there is a genuine issue of material fact for trial as to the applications of exclusions and limitations.

## CONCLUSION

For the reasons set forth herein, the Motion for Partial Summary Judgment will be granted in part and denied in part. The Motion will be granted to the extent that First Assembly's claims for additional living expenses and mental anguish will be dismissed with prejudice; otherwise, the motion will be denied.

**THUS DONE AND SIGNED** in Chambers this 15th day of August, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[40] Plaintiff's exhibit C.