UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**FIRST ASSEMBLY OF GOD CHURCH INC OF LEESVILLE L**

**CASE NO. 2:21-CV-00378**

**VERSUS**

**JUDGE JAMES D. CAIN, JR.**

**CHURCH MUTUAL INSURANCE CO S I**

**MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 29) filed by Defendant Church Mutual Insurance Company, S.I. ("Church Mutual") wherein Church Mutual moves to dismiss Plaintiff, First Assembly of God Church Inc. of Leesville's ("First Assembly") Complaint for failure to cooperate and for failure to provide necessary information and written proof of loss within 180 days of the loss. Alternatively, Church Mutual seeks dismissal of all claims for which proofs of loss were not submitted within the required 180-day period, and Church Mutual moves to dismiss First Assembly's bad faith claims under Louisiana Revised Statute 22:1892.

## FACTUAL STATEMENT

On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana. On or about October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. First Assembly alleges that its property was damaged as a result of both

Hurricanes Laura and Delta. During the relevant time period, Defendant, Church Mutual, insured the property.[1]

Plaintiff notified Church Mutual on August 27, 2020, as to the damage from Hurricane Laura, and on October 10, 2020, as to the damage from Hurricane Delta.[2] Church Mutual, through a third-party, inspected the property on August 29, September 1, and 10, 2020. On September 11 and 17, 2020, Church Mutual tendered amounts to First Assembly. First Assembly contends that the tendered amounts were not sufficient to fully compensate it for its losses.[3]

The roof was inspected by an engineer on October 8, 2020.[4] On October 12, 2020, Church Mutual made another tender to First Assembly.[5]

After First Assembly retained counsel, on October 31, 2020, a letter was sent to Church Mutual demanding the policy limits.[6] The letter contained no supporting documentation.

First Assembly retained appraiser, Randy Thompson, in October 2020, to prepare an appraisal; at the time, First Assembly had not invoked the appraisal process.

---

[1] Doc. 12-1.
[2] Doc. 1, ¶ 13; Plaintiff's exhibit D.
[3] See Final Appraisal Award totaling $5,148,831.83, Plaintiff's exhibit C, p. 185, Doc. 25-3. Church Mutual does not provide the Court with the amounts of each tender and/or the dates they were made.
[4] Church Mutual does not indicate which party engaged this engineer for inspection.
[5] Church Mutual does not indicate the amount of this tender, nor does it provide documentation to support this.
[6] Doc. 12-3.

Church Mutual made additional payments to First Assembly on November 17 and 19, 2020.[7] As of November 17, 2020, the total amount paid by Church Mutual was $148,303.56.[8]

On November 17, 2020, Church Mutual sent correspondence to First Assembly's counsel regarding roof damage.[9] On November 19, 2022, Church Mutual sent an email to counsel for First Assembly and advised that $100,000.00 was an "advance towards the water mitigation and emergency services pending a review of the invoice from Mooring Construction & Restoration" Invoice.[10] On December 7, 2020, First Assembly notified that it would be filing suit against Church Mutual.[11]

Church Mutual asserts that it requested additional information from First Assembly to dispute its engineer's findings, but that First Assembly failed to forward any records.[12] First Assembly asserts that it has submitted an expert report authored by Rick Nelson, P.E., which refutes the findings of Church Mutual's report.[13] First Assembly does not inform the Court as to when Nelson's report was provided to Church Mutual. However, the Court notes that Mr. Nelson declares that he "initially inspected the Property on June 2, 2022."[14]

On December 7, 2020, Church Mutual sent a letter to First Assembly requesting comparable replacement estimates, invoices or reports.[15] First Assembly responded that it

---

[7] Church Mutual does not indicate the amount of these payments, nor does it provide documentation to support them.
[8] Doc. 14-3.
[9] Doc. 12-5 and 12-6, emails dated November 17, 2020.
[10] Doc. 14-4,
[11] Doc. 12-5.
[12] Doc. 12-5.
[13] Plaintiff's exhibit 4, Declaration of Rick Nelson.
[14] *Id.* ¶ 3.
[15] Doc. 12-7.

would be "shrink-wrapping" the roofs on the building for damage mitigation purposes. Church Mutual denied coverage and requested that First Assembly "outline which areas of our report that you're disputing so that we can review with out [sic] engineer."[16] First Assembly offered Church Mutual access to inspect the property's roof before the shrink-wrap was applied, but offered no documentation as requested by Church Mutual.[17]

On December 9, 2020, Church Mutual forwarded to First Assembly a reservation of rights letter outlining coverage issues and advising that it was reserving its rights as it related to the roofs and the shrink-wrap.[18]

On December 31, 2020, Mooring Construction and Restoration authored a "Progress Invoice" for repairs in the total amount of $384,564.11.[19] There is no evidence in the record as to when this Invoice was provided to Church Mutual.[20]

An email from Church Mutual to First Assembly dated January 7, 2021, indicated that a review of the mitigation costs and a revised estimate was being made by Mooring USA.[21] On January 7, 2021, Church Mutual sent correspondence to First Assembly advising of the status of reviewing the mitigation invoices and again advised it was awaiting additional information from First Assembly to evaluate the claim and address concerns regarding the roof.[22] The Revised Mooring Construction & Restoration, again dated December 31, 2020, indicates a total amount due of $386,658.86.[23] Counsel for First

---

[16] Doc. 12-8, p. 1.
[17] *Id.*
[18] Doc. 12-0.
[19] Doc. 14-2.
[20] Plaintiff's counsel referred to this invoice with its 200-page report as "emergency services and repair."
[21] Do 14-10.
[22] Doc. 12-10.
[23] Doc. 14-13.

Assembly remarks that Mooring sent the Invoice to Church Mutual on January 11, 2021, although the invoice is dated December 31, 2020, there is nothing in the 223-page document that this Court can find to support when this document was sent to Church Mutual.

On January 25, 2021, Sedgwick authored a "Final Audit Report" of the Mooring Construction and Restoration Invoice and recommended that payment for the invoice be $300,407.46.[24]

On February 8, 2021, First Assembly sent a letter to Church Mutual advising that it was invoking the appraisal provisions under the policy; Church Mutual named Randy Thompson from Building Damage Consultants as its appraiser.[25] Prior to that date, Mr. Thompson had inspected the premises seven (7) times; no documentation had been sent to Church Mutual to further evaluate First Assembly's claim.[26]

Church Mutual asserts that it received none of the documentation it requested prior to First Assembly filing suit.[27] First Assembly asserts that Church Mutual had proof of loss from the carrier, prior to it filing suit on February 11, 2021.[28]

On February 15, 2021, Church Mutual by letter, requested an additional 30 days to complete its investigation. The letter also acknowledged that First Assembly had

---

[24] Doc. 14-5.
[25] Doc. 12-11.
[26] First Assembly posits that Mr. Thompson is only authorized to share his appraisal position with the carrier's appraiser and the umpire. Church Mutual did not appoint an appraiser until May 2021.
[27] Doc. 12-12, letter dated February 15, 2021.
[28] Plaintiff's exhibit 4, Declaration and expert report of Rick Nelson. The Court notes that the Declaration is dated 7/22/2022, and Nelson's expert report is dated June 8, 2022.

demanded appraisal.[29] Church Mutual represented to First Assembly that an appraiser had been hired.[30] As of March 18, 2020, Church Mutual had not named an appraiser, which prompted counsel for First Assembly to call Ms. Mandy Simon, counsel for Church Mutual, as to the delay in identifying Church Mutual's appraiser.[31] Ms. Simon confirmed that the appraisers had been in correspondence, but that she was not aware of the appraiser's name.[32] First Assembly reached out to its appraiser, Mr. Thompson, who indicated that Church Mutual had not named an appraiser, and no appraiser had attempted to contact him.[33] On March 22, 2022, First Assembly informed Ms. Simon of the same and advised that because Church Mutual had failed to name an appraiser, it would proceed with the appraisal process without an appraiser for Church Mutual.

On March 24, 2022, Church Mutual sent a letter to First Assembly advising that the request for appraisal and the suit were premature and requested that First Assembly provide a Sworn Proof of Loss Statement.[34] Also attached to the letter was a "Sworn Statement in Proof of Loss".

On March 26, 2021, Church Mutual filed a Motion to Dismiss and argued that an appraisal was premature.[35] This Court rejected Church Mutual's Motion and ordered Church Mutual to proceed with the appraisal process.[36]

---

[29] Doc. 12-12. Church Mutual suggests that the letter requests an extension of 30 days to respond to First Assembly's demand for appraisal.
[30] Plaintiff's exhibit A. See Defendant's Amended Response to Plaintiff's Requests for Admissions No.13.
[31] *Id.* Response to Request for Admissions No. 14.
[32] *Id.*
[33] Doc. 12-13.
[34] Doc. 12-14.
[35] Doc. 12-1.
[36] Doc. 16.

On May 12, 2021, in response to mandatory disclosures, First Assembly provided Church Mutual an invoice dated January 8, 2021, for the shrink wrap, as well as proposals to replace all HVAC units dated March 29, 2021, and a proposed cost for a new sign dated August 5, 2020.[37] The Initial Disclosures also listed amounts for debris removal, refrigerated products, and loss of use without supporting documentation. The Initial Disclosure did not list an amount for building repairs but indicated that First Assembly's appraiser was finalizing his report.[38]

On June 21, 2021, First Assembly's appraiser, Mr. Thomas, submitted his appraisal with a total assessment of $7,610,176.66 to Church Mutual's appraiser and the Court appointed Umpire, Cade Cole.[39] On that same day, Church Mutual's appraiser submitted his appraisal for a total assessment of $1,110,267.38.[40] The Court notes that on October 25, 2021, the Umpire made a Final Award for $5,290,123.88.[41]

On November 23, 2021, counsel for Church Mutual authored a letter to First Assembly which states as follows:

> The enclosed Statement of Loss has a covered loss replacement costs [sic] of $565,381.12. After application of the deductible, reasonable depreciation holdback, and amounts previously tendered, there is a net actual cash value of $15,701.58. Payment is enclosed.[42]

---

[37] Defendant's exhibit 2, Plaintiff's Initial Disclosures.
[38] *Id.*
[39] Plaintiff's exhibit A.
[40] Plaintiff's exhibit D, Doc. 25-1.
[41] Doc. 25-2.
[42] Plaintiff's exhibit (not named), Doc. 32-6.

The letter also stated that "under the Policy no coverage is afforded for most of the damage sought based on the fact that there was no Covered Cause of Loss."[43]

The subject policy contains the following language:

**C.    LOSS CONDITIONS**

. . .

    3.      Duties in the Event of Loss or Damage.

        a.  You must see that the following are done in the event of loss or damage to Covered Property:

. . .

(4) Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expense necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

. . .

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

---

[43] *Id*. p. 2.

> (8) Cooperate with us in the investigation or settlement of the claim.[44]

The policy also contains a Louisiana Changes Endorsement under Form A 192 (11-08), which adds the following provision to the *Duties in the Event of Loss or Damage* Loss Condition:

> If the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, you must submit the proof of loss to us within 180 days; but this 180 day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying you access to your property.[45]

Louisiana Commissioner of Insurance's news release bulletin issued on December 9, 2020, advised that the respective deadlines for filing a proof of loss for Hurricane Laura was February 23, 2021, and "Filing a sufficient proof of loss with an insurer can include not only filing the initial damage claims, but also documentation such as photos, contractor estimates, receipts for temporary repairs and any other documentation required by the company."[46]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially

---

[44] Doc. 12-2, p. 61.
[45] *Id.* p. 107.
[46] Defendant's exhibit 3.

responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Church Mutual moves to dismiss the instant loss suit because First Assembly breached the insurance contract by failing to cooperate. Specifically, Church Mutual asserts that after repeated requests, First Assembly failed to provide Church Mutual any documentation as to its disputed claim for damages, such as photos, contractor estimates, receipts for temporary repairs, ect. Thus, Church Mutual maintains that First Assembly breached its duties under the policy voiding coverage. *See Lee v. United Fire & Cas. Co.*, 607 So.2d 685 (La.App. 4 Cir. 10/15/92) (Insured's violation of the cooperation clause of the contract justified dismissal of the claim, not because of the merits or the lack of merits of the case but because of the insured's protracted, willful, and apparently bad faith refusal to furnish information and documents in contravention of the policy). "Cooperation clauses have the same force in Louisiana as they do in other jurisdictions": compliance is a "condition precedent to recovery." *Id.* at 688.

Church Mutual complains that First Assembly' deadline for submitting a sworn proof of loss was February 23, 2021, however First Assembly did not provide any documents to prove its loss until May 2021, as required under this Court's Case Management Order. While the Court is concerned that counsel for First Assembly refused to provide any documentation to support its claims that it contended was above the amount of damage determined by Church Mutual's inspectors, the Court is equally concerned that Church Mutual was also not cooperative with the appraisal process. This Court is persuaded that Church Mutual responded to First Assembly's invocation of the appraisal process with blatant deception. Considering the transgression of counsel for both parties,

and not wishing to punish First Assembly with draconian measures for such unnecessary and unprofessional conduct, the Court is persuaded that the Motion for Summary Judgment should be referred to the merits and allow a jury to decide the merits of this case.

## CONCLUSION

For the reasons set forth herein, the Court will deny the Motion for Summary Judgment (Doc. 29) filed by Defendant Church Mutual Insurance Company, S.I.

**THUS DONE AND SIGNED** in Chambers this 18th day of August, 2022.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**