FIRST ASSEMBLY OF GOD CHURCH, INC.  CIVIL ACTION NO. 2:21-cv-00378
OF LEESVILLE, LOUISIANA

            JUDGE JAMES D. CAIN, JR.

VERSUS

            MAG. JUDGE KATHLEEN KAY

CHURCH MUTUAL INSURANCE
COMPANY, S.I.

---

## EXPEDITED MOTION TO COMPEL, SANCTIONS AND LIMINE
## WITH INCORPORATED MEMORANDUM IN SUPPORT

MAY IT PLEASE THE COURT:

  Church Mutual Insurance Company, S.I. respectfully requests expedited consideration by this Honorable Court on its Motion to Compel, Sanctions, and Limine, seeking an Order that Plaintiff, First Assembly of God Church, Inc. of Leesville, Louisiana, and its contractor, Chad Hebert/Hero Design & Construction, LLC, have failed to provide the information (1) ordered by this Court in its Order dated July 10, 2023, (2) through discovery and (3) through subpoena duces tecum, and, thus, Plaintiff should be precluded from presenting said evidence at the trial of this matter. Alternatively, Plaintiff, Chad Hebert and/or or his company, should be ordered to produce the requested documentation on or before October 13, 2023, as Mr. Hebert's deposition is presently scheduled to take place on October 16, 2023, or be precluded from including any unsupported amount of damage at trial. Based on the amount of time left to prepare this matter for trial and the fact that there is a Court order that has not been fully complied with, Defendant respectfully requests expedited consideration of this present motion.

# I. FACTS

As this Court is well aware, this case involves hurricane damage claimed by Plaintiff First Assembly of God Church Inc of Leesville as a result of Hurricanes Laura and Delta. As a result of the alleged damage to the facility, several estimates were created with regard to the property at issue. However, in 2022, First Assembly entered into a contract with Hero Design & Construction, LLC ("Hero") to repair the facility. Church Mutual learned about Hero through a response to a subpoena duces tecum from the Fire Marshal's office wherein there was a request for a permit.[1] Thereafter, Church Mutual issued a subpoena to Hero on February 10, 2023 to obtain all documents it had regarding the work associated with the permit.[2] Hero provided documents on March 13, 2023, but those documents were only through the beginning of March 2023.[3] That production was also insufficient in that it contained a proposal that referenced an Xactimate report that has never been produced.[4]

First Assembly also entered into a Conditional Assignment, Subrogation and Irrevocable Direction to Pay & Grant of Lien on Insurance Proceeds Accessory Agreement wherein First Assembly "irrevocably, albeit conditionally, assigns, and unconditionally contractually subrogates" to Hero "any and all of Property Owner's post-loss rights, benefits, title, interest and proceeds to which Property Owner may be entitled under Property Owner's property and casualty insurance policy… up to the total amount of all monetary obligations owing by Property Owner to the Service Provider under and in connection with the Principal Agreement."[5] Here, a "Principal Agreement" was never produced and thus it is unknown whether (1) First Assembly even has a

---

[1] See Documents from Fire Marshal, attached hereto as Exhibit 1.
[2] See Subpoena to Hero, attached hereto as Exhibit 2.
[3] See Email from Chad Hebert, attached hereto as Exhibit 3.
[4] See Construction Contract Proposal, attached hereto as Exhibit 4.
[5] See Conditional Assignment, Subrogation and Irrevocable Direction to Pay & Grant of Lien on Insurance Proceeds Accessory Agreement, attached hereto as Exhibit 5.

claim remaining in this matter, (2) First Assembly is the proper party to bring the present claim or (3) Hero should also be a party to this suit.

Hero also produced documents with no supporting documentation as to what was being purchased or repaired including the following.

1. Equipment Share receipts that referenced invoices, but no invoices were attached to advise what materials the receipt covered or which facility or building the materials were purchased to repair.[6]

2. An Excel spreadsheet created by Hero with expenses with little to none of the supporting documentation for the items listed therein.[7]

3. Flynn Building Specialties, Inc. Invoice from December 2022 that references doors and hardware per an order. However, that "order" was never produced to determine what items were included in the invoice.[8]

4. Flynn Building Specialties, Inc. Invoice from November 2022 references doors and hardware per a quote and order. However, that "quote" and "order" was never produced to determine what items were included in the invoice.[9]

5. Flynn Building Specialties, Inc. Invoice from December 2022 references doors and hardware per an order. However, that "order" was never produced to determine what items were included in the invoice.[10]

6. C&B Electric Invoice for first draw on AC Equipment and materials, but the invoice contained no description as to what materials were actually purchased.[11]

7. A receipt from Jay's Carpet for $59,124.86 was produced but there were no invoices to support such amount.[12]

8. Flynn Building Specialties, Inc. Invoice from October 2022 references doors and hardware per a quote and order. However, that "quote" and "order" was never produced to determine what items were included in the invoice.[13]

---

[6] See Exhibit 6, pgs. 1-4, attached hereto.
[7] See Exhibit 6, pgs. 5-13, attached hereto.
[8] See Exhibit 6, pg. 14, attached hereto.
[9] See Exhibit 6, pg. 15, attached hereto.
[10] See Exhibit 6, pg. 16, attached hereto.
[11] See Exhibit 6, pg. 17, attached hereto.
[12] See Exhibit 6, pgs. 18-22, attached hereto.
[13] See Exhibit 6, pg. 23, attached hereto.

9. Documentation from QOP of Louisiana appears to be a receipt from November 2022 but is missing the first page.[14]

10. Red River Glass is a proposal with no invoice or documentation the proposal was accepted or paid.[15]

Prior thereto, Church Mutual issued written discovery to First Assembly seeking documentation regarding repairs.[16] No documents were produced and the responses were never supplemented.[17] In preparation of the July 2023 trial, Chad Hebert, the owner of Hero was set to give a deposition.[18] A subpoena was also issued for updated documents.[19] No documents were forwarded and the deposition did not move forward due to the trial being continued and the Court ordering the production of the remainder of the invoices which were to be produced within 14 days of July 10, 2023.[20] On July 17, 2023, Plaintiff provided a link to a production by Hero.[21] After reviewing the documents, it was determined that the production was insufficient and Plaintiff was advised of the outstanding and insufficient documents.[22] Those insufficiencies include the following.

1. Bate No. 172 was a listing of draws from October 14, 2022 for upgrades and a panel, but there is no indication as to what these amounts include, whether it is for materials or labor, there is no supporting invoices or proposals, and there is no indication the building these were being billed.[23]

2. Bate No. 62 is a Lowe's receipt for payment on account. However, the account is in the name of Southern Solutions Chiropractic. There is no indication as to what was purchased on this account, whether the account is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[24]

---

[14] See Exhibit 6, pg. 24 attached hereto.
[15] See Exhibit 6, pg. 25 attached hereto.
[16] See Discovery propounded to Plaintiff, attached hereto as Exhibit 7.
[17] See Plaintiff's Responses to Discovery, attached hereto as Exhibit 8.
[18] See Notice of Deposition and Subpoena, attached hereto as Exhibit 9.
[19] *Id.*
[20] Doc. 97.
[21] See Email from Plaintiff's counsel, attached hereto as Exhibit 10.
[22] See Email to Plaintiff's counsel, attached hereto as Exhibit 11.
[23] See pg. 1 of Exhibit 12, attached hereto.
[24] See pg. 2 of Exhibit 12, attached hereto.

3. Bate No. 134 is a receipt from Openedgepay with no indication as to what was purchased, where it was purchased, was the amount for labor, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[25]

4. Bate No. 28 is a payment on account to Sherwin Williams with no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[26]

5. Bate No. 23 is a receipt for payment on account to Stine. The receipt references invoice 35101, but same was not produced. The receipt provides no information as to what items were purchased or what buildings the items were purchased to repair.[27]

6. Bate No. 40 is some type of invoice for Quality Outdoor Products; however, page one of the invoice is missing, which contains a listing of items that accounts for more than half of the total listed on the invoice.[28]

7. Bate Nos. 122-124 is Elliot Electric invoices that lists several past due invoices, but no further details are provided including the referenced invoices, whether the amount was for labor or materials, whether all amounts were related to the First Assembly facility, and what items were purchased.[29]

8. Bate No. 127 is an Elliot Electric email receipt that lists several invoices, but no further details are provided in this email. Neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[30]

9. Bate No. 113 is a receipt from Gilberts Carpet. There is no indication as whether the amount is for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[31]

10. Bate No. 135 is a receipt from ACA Plumbing. There is no indication as whether the amount is for labor or materials, what items were purchased, or what buildings the items were purchased to repair.[32]

---

[25] See pg. 3 of Exhibit 12, attached hereto.
[26] See pg. 4 of Exhibit 12, attached hereto.
[27] See pg. 5 of Exhibit 12, attached hereto.
[28] See pg. 6 of Exhibit 12, attached hereto.
[29] See pgs. 7-9 of Exhibit 12, attached hereto.
[30] See pg. 10 of Exhibit 12, attached hereto.
[31] See pg. 11 of Exhibit 12, attached hereto.
[32] See pg. 12 of Exhibit 12, attached hereto.

11. Bate Nos. 131-132 is a Coburn's receipt that references several invoices. These invoices have not been produced and, thus, there is no indication as whether the amount was for labor or materials, what items were purchased, or what buildings the items were purchased to repair.[33]

12. Bate Nos. 129-130 is a Coburn's receipt that references several invoices. These invoices have not been produced and thus there is no indication as whether the amount was for labor or materials, what items were purchased, or what buildings the items were purchased to repair.[34]

13. Bate No. 126 is an Elliot Electric email receipt that lists several invoices but no further details are provided in this email. Neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[35]

14. Bate Nos. 120-121 is an Equipment Share receipt that lists several invoices. However, neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[36]

15. Bate No. 30 is a Sherwin Williams receipt with no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[37]

16. Bate No. 27 is a Stine receipt for payment on account with no indication of any invoice. There is also no indication as to what was purchased on this account, whether the account is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[38]

17. Bate No. 125 is an Elliot Electric email receipt that lists several invoices, but no further details are provided in this email. Neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[39]

---

[33] See pg. 13-14 of Exhibit 12, attached hereto.
[34] See pg. 15-16 of Exhibit 12, attached hereto.
[35] See pg. 17 of Exhibit 12, attached hereto.
[36] See pgs. 18-19 of Exhibit 12, attached hereto.
[37] See pg. 20 of Exhibit 12, attached hereto.
[38] See pg. 21 of Exhibit 12, attached hereto.
[39] See pg. 22 of Exhibit 12, attached hereto.

18. Bate No. 29 is a Sherwin Williams receipt with no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[40]

19. Bate No. 128 is a Coburn's receipt that references several invoices. These invoices have not been produced and thus there is no indication as whether the amount was for labor or materials, what items were purchased, or what buildings the items were purchased to repair.[41]

20. Bate No. 26 is a Stine receipt for payment on account and references an invoice. However, that invoice has not been produced. In addition, there is also no indication as to what items were purchased or what buildings the items were purchased to repair.[42]

21. Bate Nos. 118-119 is an Equipment Share receipt that lists several invoices. However, neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[43]

22. Bate No. 217 is a receipt from Openedgepay with no indication as to what was purchased, where it was purchased, was the amount for labor, what items were purchased, or what buildings the items were purchased to repair.[44]

23. Bate Nos. 211-212 is a Schamerhorn Construction receipt with no indication as to what was purchased or what buildings the items were purchased to repair.[45]

24. Bate No. 215 is Coburn Supply email receipt, but no further details are provided in this email. Neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[46]

25. Bate No. 216 is a Coburn Supply email receipt, but no further details are provided in this email. Neither the invoices nor any additional supporting documentation has been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[47]

---

[40] See pg. 23 of Exhibit 12, attached hereto.
[41] See pg. 24 of Exhibit 12, attached hereto.
[42] See pg. 25 of Exhibit 12, attached hereto.
[43] See pgs. 26-27 of Exhibit 12, attached hereto.
[44] See pg. 28 of Exhibit 12, attached hereto.
[45] See pg. 29-30 of Exhibit 12, attached hereto.
[46] See pg. 31 of Exhibit 12, attached hereto.
[47] See pg. 32 of Exhibit 12, attached hereto.

26. Bate No. 220 is an Elliot Electric email receipt that lists several invoices but no further details are provided in this email. Neither the invoices nor any additional supporting documentation have been produced. There is no indication as to whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[48]

27. Bate Nos. 218-219 is an Equipment Share receipt that lists an invoice. However, neither the invoice nor any additional supporting documentation have been produced. There is no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[49]

28. Bate No. 213 is a Sherwin Williams receipt with no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[50]

29. Bate No. 214 is a Sherwin Williams receipt with no indication as whether the amount was for labor or materials, whether the payment is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[51]

30. Bate No. 25 is a Stine receipt for payment on account with no indication of any referenced invoice. There is also no indication as to what items were purchased or what buildings the items were purchased to repair.[52]

31. Bate No. 24 is a Stine receipt for payment on account and references an invoice. However, that invoice has not been produced. In addition, there is also no indication as to what items were purchased or what buildings the items were purchased to repair.[53]

32. Bate No. 61 is a screenshot that appears to be payments on a Lowe's account. However, the account is in the name of Southern Solutions Chiropractic. There is no indication as to what was purchased on this account, whether the account is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[54]

33. Bate Nos. 49-57 appears to be an itemization for Lowe's for the account of Southern Solutions Chiropractic that lists several invoices; however, no invoices or supporting documentation have been produced. There is no indication as to what was purchased on this account.[55]

---

[48] See pg. 33 of Exhibit 12, attached hereto.
[49] See pgs. 34-36 of Exhibit 12, attached hereto.
[50] See pg. 36 of Exhibit 12, attached hereto.
[51] See pg. 37 of Exhibit 12, attached hereto.
[52] See pg. 38 of Exhibit 12, attached hereto.
[53] See pg. 39 of Exhibit 12, attached hereto.
[54] See pg. 40 of Exhibit 12, attached hereto.
[55] See pgs. 41- 49 of Exhibit 12, attached hereto.

34. Bate Nos. 58-60 appears to be an itemization for Lowe's for the account of Southern Solutions Chiropractic; however, no invoices or supporting documentation has been produced. There is no indication as to what was purchased on this account, whether the account is even related to the First Assembly facility, what items were purchased, or what buildings the items were purchased to repair.[56]

35. Bate No. 48 is a handwritten document with Robert's Paint and Drywall listed on it. There is no information as to whether this is a proposal or an invoice, whether same has been paid, whether same is for labor or materials, or where said labor or materials were utilized.[57]

In addition to these items, Defendant also requested production of any additional documentation for work that had been completed and for any outstanding work.[58] To date, and after a discovery conference on the issue, no additional documentation has been produced.

## II.    LAW AND ARGUMENT

Under Rule 37 of the Federal Rules of Civil Procedure, the Court has authority to issue sanctions for a party's failure to cooperate in discovery and failure to comply with a court order. The failure to produce repair documentation after requested in discovery, through a subpoena, and through a court order, is the type of behavior that warrants the imposition of discovery sanctions in the form of excluding the requested but unproduced documents.

As this Court has advised on several occasions, including the pre-trial conference in this matter, once repairs have been performed, estimates are moot. The relevant information becomes what has been repaired, the costs of those repairs, whether those repairs are related to the Hurricanes, and whether there is coverage for same. Here, it is essential to the defense of this matter to know what was repaired at the First Assembly facility and the costs of same. Here, based on the production by Plaintiff, Hero and/or Mr. Hebert, it is impossible to determine both scope and costs. Providing receipts with no supporting documentation, including itemized

---

[56] See pgs. 50-52 of Exhibit 12, attached hereto.
[57] See pgs. 53 of Exhibit 12, attached hereto.
[58] See Exhibit 11.

invoices/orders, is useless.  The documents produced provide no information to anyone viewing the records as to what was repaired.  It is the Insured's burden to maintain these records and provide same to its insurance company.  This has not been done, even though Plaintiff was required under the Policy with Church Mutual, ordered by this Court, and after several discovery requests.  It is not the Defendant's burden to issue subpoenas to the vendors/suppliers that Hero has produced receipts.  It was Hero and Plaintiff's burden to maintain the necessary documentation to ensure it would be able to establish the costs to repair the facility.  Placing such a burden on the Defendant is impossible as a defendant would then be required to determine each supplier and/or vendor a contractor utilized and hope that such supplier/vendor responds to any request for records.  If that is the burden that is being placed on the Defendant, which is an impossible one that is contrary to law, this case is not in the proper procedural posture for trial in November and should be continued.

The failure to either maintain or provide the documents is deliberate and in violation of Defendant's right to defend against the asserted claims. Plaintiff is allegedly seeking approximately $4.5 million in repairs but has not or will not provide the documentation to support its claim. Such indifference to the discovery rules, the scheduling order, and this Court's order warrants the imposition of sanctions in this matter in the form of a motion to exclude all unsupported repairs and costs from the trial of this matter as set forth in the documentation attached hereto.  The failure to provide this information has been a continuous problem in this matter and the defense should not be prejudiced from preparing for trial.

Alternatively, to the extent this Court believes Plaintiff should be given another opportunity to comply with its order even though Plaintiff was previously ordered to provide, "any, and all documents, invoices, etc. for the completed work on the Church," which Plaintiff has failed to do, this Court should again order the production to take place on or before October 13, 2023, or

Plaintiff be precluded from utilizing any unsupported documentation at trial to support its claim. Thereafter, this Court should allow Defendant the opportunity to file an additional motion in limine to establish the amount incurred based on the failure to produce supporting documents.

## III. CONCLUSION

The failure to produce all repair documentation in this matter has prejudiced the defense in the preparation of this trial now on two occasions. The disregard of an order by this Court for the production of these necessary documents warrants sanctions in this matter in the form of a Motion to Exclude all unsupported costs from the trial of this matter.

Respectfully submitted,

DEGAN BLANCHARD & NASH

SIDNEY W. DEGAN, III #4804
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone: 504.529.3333
Facsimile: 504.529.3337
E-mail: sdegan@degan.com


*/s* Mandy A. Simon
MANDY A. SIMON #33373
600 Jefferson Street, Suite 800
Lafayette, Louisiana 70501-8920
Telephone: 337.345.8628
Facsimile: 337.345.5732
E-mail: msimon@degan.com

*Counsel for Church Mutual Insurance Company, S.I.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system and has been served upon counsel for all parties to this proceeding via electronic filing notification, facsimile and/or first class United States mail, properly addressed, postage prepaid, at the last known address.

Lafayette, Louisiana, this 3rd day of October, 2023.

_____*s/Mandy Simon*_____
MANDY A. SIMON